JUDGE KOELL

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Kevin Dorisca

_____

Write the full name of each plaintiff.

-against-

Una Rawls, née Dorisca

_____

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

# 18 CV 9756

_____CV_____

(Include case number if one has been
assigned)

## COMPLAINT

Do you want a jury trial?
☐ Yes   ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

**Federal Question**

☑ **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship ( 28 U.S.C. § 1332(a) (1))

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _Kevin Dorisca_ , is a citizen of the State of
           (Plaintiff's name)

_New York_
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____Una Rawls_____, is a citizen of the State of
(Defendant's name)

_____Massachusetts_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

_Kevin_                                      _Dorisca_
First Name                Middle Initial        Last Name

_255-26  149th Ave_
Street Address

_Queens, Rosedale_          _NY_          _11422_
County, City                State          Zip Code

_347-341-1006_          _k.dorisca@gmail.com_
Telephone Number         Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:    Una         Rawls, née Dorisca

First Name                    Last Name

CEO   Hairbarten

Current Job Title (or other identifying information)

4 Jasmine Dr

Current Work Address (or other address where defendant may be served)

Worcester  West Boylston    MA   01583

County, City                  State              Zip Code

Defendant 2:

First Name                    Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                  State              Zip Code

Defendant 3:

First Name                    Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                  State              Zip Code

Defendant 4:

First Name _____  Last Name _____

Current Job Title (or other identifying information)
_____

Current Work Address (or other address where defendant may be served)
_____

County, City _____  State _____  Zip Code _____

## III. STATEMENT OF CLAIM

Place(s) of occurrence: NYS & MA

Date(s) of occurrence: May 2018, October 14-8 2018

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

• I own 50% of AuRebelle, LLC along with Una Rawls. Since inception (2013) + incorporation (2014) we used Email - AnaNaturals @yahoo.com ; Paypal - Username -ananaturals @yahoo.com + Instagram - username @ Ana Naturals to run our business. As of May 2018, Una Dorisca changed the password to our Email, + refused to provide it to me. As of October 2018, Mrs. Rawls, changed the passwords of our Paypal Account ( the account we collect monies, determines what we pay in taxes, etc) while my personal JP Morgan Checking account remained as a backup funding source. After she locked me out of Paypal, she issued refunds to customers using my JP Morgan as the fund source. She changed passwords to our Instagram account, announced that AuRebelle was "closed for good" + that "we" had a new site + new page "Hair Garten" which she promoted as a continuation of AuRebelle

Page 5

On her website www.HairGarten.com she even has photos, that I took, of our AuRebelle products

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

① I am seeking the login information + access to the accounts associated with AuRebelle,LLC. Yahoo - AnuNaturals@yahoo.com, Paypal username AnuNaturals@yahoo.com (Business account for AuRebelle,LLC), Instagram - @AnuNaturals. ② A Cease + Desist promoting "HairGarten" as a continuation of AuRebelle + an official statement from Ana Hawls, retracting statements that AuRebelle is closed + that HairGarten is the continuation of it. ③ $1,000 - Paypal transfer she reversed out of my personal account. $613.7? she refunded out of my chase. $613.7? she refunded

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 10/23/18 | |
| Dated | Plaintiff's Signature |
| Kevin | Dorisca |
| First Name     Middle Initial | Last Name |
| 255-26   149th Ave | |
| Street Address | |
| Queens, Rosedale     NY     11422 | |
| County, City     State     Zip Code | |
| 347-341-1006 | K.dorisca@gmail.com |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

### for the

Southern _____ District of _New York_

_____ Division

Kevin Dorisca

_Plaintiff(s)_
_(Write the full name of each plaintiff who is filing this complaint._
_If the names of all the plaintiffs cannot fit in the space above,_
_please write "see attached" in the space and attach an additional_
_page with the full list of names.)_

-v-

Una Rawls, née Dorisca

_Defendant(s)_
_(Write the full name of each defendant who is being sued. If the_
_names of all the defendants cannot fit in the space above, please_
_write "see attached" in the space and attach an additional page_
_with the full list of names.)_

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

_(to be filled in by the Clerk's Office)_

## COMPLAINT AND REQUEST FOR INJUNCTION

Submitted separately

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Kevin Dorisca |
| Street Address | 255-26 149th ave |
| City and County | Rosedale, Queens |
| State and Zip Code | New York 11422 |
| Telephone Number | 347-341-1006 |
| E-mail Address | k.dorisca@gmail.com |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title _(if known)_. Attach additional pages if needed.

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ ...deral question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

~~... uniform Limited Partner_ in A.. SECTION 405, RIGHT S 1/ ... A PERSON ... IGNATED AS PARTNER.~~

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship ( 28  U.S.C § 1332 (c)(1) )

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* Kevin Dorisca _____, is a citizen of the State of *(name)* New York _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

and has its principal place of business in the State of *(name)*

_____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* Una Rawls, née Dorisca _____, is a citizen of the State of *(name)* Massachusetts _____. Or is a citizen of *(foreign nation)* _____.

C.   **What are the facts underlying your claim(s)?** *(For example: What happened to you? Who did what?*
*Was anyone else involved?  Who else saw what happened?)*
1. I own 50% of Au Rebelle, LLC
2. AnuNaturals@yahoo.com has been the email used for Au Rebelle, LLC since inception.
3. Paypal has been the financial account used for Au Rebelle, LLC since inception.
4. @AnuNaturals Instragram page has been the official Instagram since inception.
5. Inception 2013 / Incoporation 2014

---

## IV.   Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you
sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation
could not be measured.

---

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal
arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include
the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any
punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or
punitive money damages.

I'd like Una Rawls to provide me, Kevin Dorisca with the usernames and passwords for all account associated
with Au Rebelle, LLC that I do not have access to/she changed passwords for and refused to provide to me which
include: our Instagram profile @AnuNaturals, our Email - AnuNaturals@yahoo.com, our Paypal Account -
AnuNaturals@Yahoo.com. - I own 50% of Au Rebelle, LLC

Damages:
D1. $1,000 that I intially transferred to my Personal Paypal account from the business account on 10/19/2018 that
Una Rawls had reversed after she locked me out of the account.

D2. $613.74 that Una Rawls took out of my JP Morgan Account to issue customer refunds. She removed her JP
Morgan bank account as a backup fund for Paypal, locked me out of the paypal account and used my personal
checking account as the Fund source for refunds to clients after she went on the Instagram page that she locked

Your Honor,

The following document is a Table of Contents:

Provided by Kevin Dorisca for the Injunction to be filed against Una Rawls nèe Dorisca in regards to Au Rebelle, LLC.

10/23/2018

1. Complaint and Request for Injunction Form
2. LLC Articles of Organization, **Au Rebelle**
3. LLC Limited Liability Company Agreement, Au Rebelle
4. Jurisdiction Detailed Report, Au Rebelle
5. Formal Letter of Request, Au Rebelle
6. Uniform Partnership Act, Section 408 Rights to Information of Partners and Persons Dissociated as Partners
7. Screenshots of @AnuNaturals Instagram for Au Rebelle, LLC, where Una Rawls falsely state Au Rebelle, LLC is closed and promoted her new business
8. Screenshots fro HairGarten.com, Mrs. Rawls new site which she promotes Au Rebelle products
9. Chase Bank statement showing the refund Mrs. Rawls iussed from my personal Chase account after locking me out Au Rebelle, LLC Paypal account.
10. Copy of Email in attempt to reconcile with Business Partner
11. Copy of Text between my mother and then Business partner in regards to email access.

Short Summary:

I own 50% of Au Rebelle, LLC an E-Commerce business selling natural hair products. Una Rawls, nee Dorisca own the other 50%. Mrs. Rawls has changed the passwords to our email, PayPal and Instagram accounts, and refused to provide them to me. Also, she has falsely stated the our business is closed and is promoting that a new business she created will be the new site and name for Au Rebelle,LLC. Mrs. Rawls then issued $613.74 in refunds using my personal checking account (the sole backup funding after she removed her & changed the passwords.)



# ARTICLES OF ORGANIZATION
## OF
## AU REBELLE, LLC
#### Under Section 203 of the Limited Liability Company Law

**FIRST:**  The name of the limited liability company is:

**AU REBELLE, LLC**

**SECOND:**  The county, within this state, in which the office of the limited liability company is to be located is SCHENECTADY.

**THIRD:**  The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

CORPORATION SERVICE COMPANY
80 STATE ST.
ALBANY, NY 12207

**FOURTH:**  The limited liability company designates the following as its registered agent upon whom process against it may be served within the State of New York is:

CORPORATION SERVICE COMPANY
80 STATE ST.
ALBANY, NY 12207

**FIFTH:**  The limited liability company is to be managed by: ONE OR MORE MEMBERS.

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

KEVIN DORISCA, ORGANIZER  (signature)
_____
KEVIN DORISCA , ORGANIZER
2921 HALSEY DRIVE
SCHENECTADY, NY 12304

**Filed by:**
KEVIN DORISCA
2921 HALSEY DRIVE
SCHENECTADY, NY 12304

# CORPORATION SERVICE COMPANY (45)
# DRAWDOWN
# CUSTOMER REF# 2553174MM

# FILED WITH THE NYS DEPARTMENT OF STATE ON: 08/13/2014
# FILE NUMBER: 140813010168; DOS ID: 4621133

**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**AU REBELLE, LLC**
**A NEW YORK LIMITED LIABILITY COMPANY**

*[FORM MULTIPLE MEMBER, MEMBER-MANAGED LLC AGREEMENT]*

**NOTE: THIS IS A FORM OF LLC AGREEMENT AND MAY NOT BE APPROPRIATE FOR USE IN EVERY TRANSACTION, FOR EVERY BUSINESS, TAX, REGULATORY OR OTHER PURPOSE OR IN EVERY JURISDICTION. IT IS IMPORTANT TO REVIEW THE ENDNOTES VERY CAREFULLY AS THE LAWS AND REQUIREMENTS OF EACH STATE CAN VARY SIGNIFICANTLY. IT IS ALSO IMPORTANT TO CAREFULLY REVIEW THE LAWS OF THE STATE IN WHICH THE LLC IS FORMED (OR TO CONSULT A LICENSED ATTORNEY IN THAT STATE) AND RELEVANT FEDERAL AND STATE TAX LAWS (OR TO CONSULT A LICENSED TAX ATTORNEY OR ADVISOR) FOR COMPLIANCE WITH SUCH LAWS. THE COMPANY CORPORATION CANNOT GUARANTEE THE ACCURACY OR CURRENCY OF THIS FORM LLC AGREEMENT.**

# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# AU REBELLE, LLC
# A NEW YORK LIMITED LIABILITY COMPANY

The undersigned members (collectively, the "Members" and each, a "Member") hereby form a limited liability company pursuant to and in accordance with the statute governing limited liability companies in the State of New York (as amended from time to time, the "Act"), and hereby declare the following to be the Limited Liability Company Agreement of such limited liability company (this "Agreement"):

1.    <u>Name</u>.  The name of the limited liability company (the "Company") is Au Rebelle, LLC.[1]

2.    <u>Purpose and Powers</u>.  The purpose of the Company is (i) Beauty and Natural Hair Products and (ii) to engage in any activity for which limited liability companies may be organized in the State of New York.[2]   The Company shall possess and may exercise all of the powers and privileges granted by the Act and all of the lawful powers and privileges granted by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the lawful business purposes or activities of the Company.

3.    <u>Formation; Term; Existence</u>.  Kevin Dorisca, as an authorized person, has executed, delivered and filed the initial Articles of Organization[3] of the Company with the Department of State[4] of the State of New York.[5]  The Members, or any Member(s) so authorized, shall execute, deliver and file any amendments and/or restatements of the Articles of Organization of the Company and any other certificates or other documents (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.  The term of the Company commenced on the date hereof, being the date the initial Articles of Organization of the Company was filed with the Department of State of the State of New York[6], and the term of the Company shall continue until the dissolution of the Company pursuant to Section 20 hereof.[7]  The existence of the Company as a separate legal entity shall continue until the cancellation of the Articles of Organization of the Company pursuant to the Act and this Agreement.

4.  <u>Registered Office</u>.  The LLC shall continuously maintain in the state of New York, a known place of business that may be the address of its statutory agent.

5.  <u>Registered Agent</u>.  The LLC shall continuously maintain in the state of New York, a statutory agent who may be either:
  a) An individual who resides in this state
  b) A domestic LLC formed under New York state law
  c) A foreign LLC authorized to transact business in the state of New York

d) A limited liability company formed under New York state law, or

6. A limited liability company authorized to transact business in the state of New York.

7. <u>Admission of Members</u>. Simultaneously with the execution and delivery of this Agreement and the filing of the initial Articles of Organization of the Company with the Department of State of the State of New York, each Member is hereby admitted to the Company as a member of the Company in respect of its respective Interests (as hereinafter defined), which Interests shall be issued by the Company to such Member, and shall be acquired by such Member, upon the delivery to the Company of such Member's respective capital contribution as provided in Section 9 below. The Members shall have the initial Percentage Interests as defined and set forth in Sections 11 and 12.

8. <u>Interest</u>. The Company shall be authorized to issue a single class of limited liability company interests in the Company (the "Interests"), which may be evidenced by a certificate,[8] and shall include any and all benefits to which the holder of such Interests may be entitled in this Agreement and under the Act, together with all obligations of such person to comply with the terms and provisions of this Agreement and obligations under the Act.

9. <u>Capital Contributions</u>. Simultaneously with its execution hereof, each Member agrees to contribute to the Company (as to each, its "Capital Contribution") the amount of money or property set forth opposite such Member's name on the attached Schedule A in exchange for its respective Interest.[9] To the fullest extent permitted by applicable law, no Member is required to make any contribution of property or money to the Company in excess of its respective Capital Contribution. No Member shall contribute any additional cash or property, as a capital contribution, to the Company without the prior consent of the majority the Members.

10. <u>Capital Accounts</u>. An account shall be established in the Company's books for each Member and transferee (each, a "Capital Account") in accordance with the rules of Section 704 of the Code (as hereinafter defined) and Section 1.704-1(b)(2)(iv) of the Regulations (as hereinafter defined).

11. <u>Percentage Interest</u>. Each Member's Interest in the Company shall be expressed as a percentage equal to the ratio on any date of such Member's Capital Account on such date to the aggregate Capital Accounts of all Members on such date, such Capital Accounts to be determined after giving effect to all contributions of property or money, distributions and allocations for all periods ending on or prior to such date (as to any Member, its "Percentage Interest").

12. <u>Initial Percentage Interest of the Members</u>. As of the date hereof, each Member's initial Percentage Interest shall be as set forth opposite such Member's name on the attached Schedule A.

13. <u>Distributions</u>.  At such time or times as the Members shall determine, the Members shall promptly cause the Company to distribute to the Members any cash held by the Company which is neither reasonably necessary for the operation of the Company nor in violation of applicable law (including, but not limited to, the Act).  Except as set forth in Section 21, cash available for distribution shall be distributed to the Members in accordance with their respective Percentage Interests.

14. <u>Allocation of Profits and Losses</u>.

(a)      <u>General Allocation Rules</u>.  After giving effect to the special allocations set forth in Section 14(b) hereof, the profits and losses of the Company shall be allocated to the Members in accordance with their respective Percentage Interests.

(b)      <u>Special Allocation Rules</u>. The following special allocations shall be made in the following order:

(1)      Minimum Gain Chargeback.  Except as otherwise provided in Section 1.704-2(f) of the Regulations, notwithstanding any other provision of this Section 14, if there is a net decrease in Company Minimum Gain (as defined in Section 14(c) hereof) during any Allocation Year (as defined in Section 14(c) hereof), each Member shall be specially allocated items of Company income and gain for such Allocation Year (and, if necessary, subsequent Allocation Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto.  The items to be so allocated shall be determined in accordance with sections 1.704-2(f)(6) and 1.704-2(j)(2) of the Regulations.  This Section 14(b)(1) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(f) of the Regulations and shall be interpreted consistently therewith.

(2)      Member Minimum Gain Chargeback.  Except as otherwise provided in Section 1.704-2(i)(4) of the Regulations, notwithstanding any other provision of this Section 14, if there is a net decrease in Member Nonrecourse Debt Minimum Gain  (as defined in Section 14(c) hereof) attributable to a Member Nonrecourse Debt  (as defined in Section 14(c) hereof) during any Allocation Year, each Member who has a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(5) of the Regulations, shall be specially allocated items of Company income and gain for such Allocation Year (and, if necessary, subsequent Allocation Years) in an amount equal to such Member's share of the net decrease in Member Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(4).  Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto.  The items to be so allocated shall be determined in accordance with Sections 1.704-2(i)(4) and 1.704-2(j)(2) of the Regulations.  This Section 14(b)(2) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(i)(4) of the Regulations and shall be interpreted consistently therewith.

(3)      Qualified Income Offset.  In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit (as defined in Section 14(c) hereof) of the Member as quickly as possible, provided that an allocation pursuant to this Section 14(b)(3) shall be made only if and to the extent that the Member would have an Adjusted Capital Account Deficit after all other allocations provided for in this Section 14 have been tentatively made as if this Section 14(b)(3) were not in this Agreement.

(4)      Gross Income Allocation.  In the event any Member has a deficit Capital Account at the end of any Allocation Year which is in excess of the sum of (i) the amount such Member is obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Member shall be specially allocated items of Company income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 14(b)(4) shall be made only if and to the extent that such Member would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Section 14 have been made as if Section 14(b)(3) hereof and this Section 14(b)(4) were not in this Agreement.

(5)      Nonrecourse Deductions.  Nonrecourse Deductions (as defined in Section 14(c) hereof) for any Allocation Year shall be specially allocated to the Members in proportion to their respective Percentage Interests.

(6)      Member Nonrecourse Deductions.  Any Member Nonrecourse Deductions (as defined in Section 14(c) hereof) for any Allocation Year shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in accordance with Regulations Section 1.704-2(i)(1).

(7)      Section 754 Adjustments.  To the extent an adjustment to the adjusted tax basis of any Company asset, pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulations Section 1.704-1(b)(2)(iv)(m)(2) or 1.704-1(b)(2)(iv)(m)(4), to be taken into account in determining Capital Accounts as the result of a distribution to a Member in complete liquidation of such Member's interest in the Company, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in accordance with their interests in the Company in the event Regulations Section 1.704-1(b)(2)(iv)(m)(2) applies, or to the Member to whom such distribution was made in the event Regulations Section 1.704-1(b)(2)(iv)(m)(4) applies.

(c)      <u>Definitions for Special Allocation Rules.</u>

(1) "Adjusted Capital Account Deficit" means, with respect to any

Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Allocation Year, after giving effect to the following adjustments:

      (i)     Credit to such Capital Account any amounts which such Member is deemed to be obligated to restore pursuant to the penultimate sentences in Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations; and

      (ii)    Debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), and 1.704-1(b)(2)(ii)(d)(6) of the Regulations.

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and shall be interpreted consistently therewith.

      (2) "Allocation Year" means (i) the period commencing on the date hereof and ending on December 31, [____], (ii) any subsequent twelve (12) month period commencing on January 1 and ending on December 31, or (iii) any portion of the period described in clauses (i) or (ii) for which the Company is required to allocate profits, losses and other items of Company income, gain, loss or deduction pursuant to Section 14 hereof.

      (3) "Code" means the Internal Revenue Code of 1986, as amended.

      (4) "Company Minimum Gain" has the same meaning as the term "Partnership Minimum Gain" in Regulations Sections 1.704-2(b)(2) and 1.704-2(i)(2).

      (5) "Member Nonrecourse Debt" has the same meaning as the term "Partner nonrecourse debt" in Section 1.704-2(b)(4) of the Regulations.

      (6) "Member Nonrecourse Debt Minimum Gain" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Regulations.

      (7) "Member Nonrecourse Deductions" has the same meaning as the term "Partner nonrecourse deductions" in Sections 1.704-2(i)(1) and 1.704-2(i)(2) of the Regulations.

      (8) "Nonrecourse Deductions" has the meaning set forth in Section 1.704-2(b)(1) of the Regulations.

      (9) "Regulations" means the Treasury Regulations promulgated under the Code.

      (d)    Curative Allocations. The allocations set forth in Sections 14(b)(1), 134(b)(2), 14(b)(3), 14(b)(4), 14(b)(5), 14(b)(6), 14(b)(7) and 14(e) hereof (the "Regulatory

Allocations") are intended to comply with certain requirements of the Regulations. It is the intent of the Members that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Company income, gain, loss or deduction pursuant to this Section 14(d). Therefore, notwithstanding any other provision of this Section 14 (other than the Regulatory Allocations), the Members shall make such offsetting special allocations of Company income, gain, loss or deduction in whatever manner they determine appropriate so that, after such offsetting allocations are made, each Member's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Member would have had if the Regulatory Allocations were not part of the Agreement and all Company items were allocated pursuant to Section 14(a) hereof.

(e)    Loss Limitation. Losses allocated pursuant to Section 14(a) hereof shall not exceed the maximum amount of losses that can be allocated without causing any Member to have an Adjusted Capital Account Deficit at the end of any Allocation Year. In the event some but not all of the Members would have Adjusted Capital Account Deficits as a consequence of an allocation of losses pursuant to Section 14(a) hereof, the limitation set forth in this Section 13(e) shall be applied on a Member by Member basis and losses not allocable to any Member as a result of such limitation shall be allocated to the other Members in accordance with the positive balances in such Member's Capital Accounts so as to allocate the maximum permissible losses to each Member under Section 1.704-1(b)(2)(ii)(d) of the Regulations.

(f)    Other Allocation Rules.

(1)    For purposes of determining the profits, losses, or any other items allocable to any period, profits, losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Members using any permissible method under Code Section 706 and the Regulations thereunder.

(2)    The Members are aware of the income tax consequences of the allocations made by this Section 14 and hereby agree to be bound by the provisions of this Section 14 in reporting their shares of Company income and loss for income tax purposes.

(3)    Solely for purposes of determining a Member's proportionate share of the "excess nonrecourse liabilities" of the Company within the meaning of Regulations Section 1.752-3(a) (3), the Members' interests in Company profits are in proportion to their respective Percentage Interests.

(4)    To the extent permitted by Section 1.704-2(h) (3) of the Regulations, the Members shall endeavor to treat distributions pursuant to Section 21 hereof as having been made from the proceeds of a Nonrecourse Liability or a Member Nonrecourse Debt only to the extent that such distributions would cause or increase an Adjusted Capital Account Deficit for any Member.

(5)    In accordance with Code Section 704(c) and the Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to

the Company for federal income tax purposes and its initial gross asset value using the standard allocation method under the Regulations to Section 704(c) of the Code.

15. Management[10]

(a)    The Company shall be managed by the Members[11], the affirmative vote of the majority[12] of the Members being necessary to constitute valid action of the Company (the "Required Vote").  In connection with any action taken for which a Required Vote was obtained, the Members shall have all powers necessary, useful or appropriate for the management and conduct of the Company's business.  All instruments, contracts, agreements and documents providing for the acquisition, mortgage or disposition of property of the Company shall be valid and binding on the Company if executed by any authorized Member.

(b)    To the extent permitted by applicable law and subject to the provisions of this Agreement, the Members hereby authorize the Company to purchase assets from, sell assets to or otherwise deal with any Member, acting on its own behalf, or any affiliate of any Member; *provided* that any such purchase, sale or other transaction shall be made on terms and conditions which are no less favorable to the Company than if the sale, purchase or other transaction had been made with an independent third party.

16. Compensation.  None of the Members shall receive compensation for services rendered to the Company in their capacities as Members.

17. Assignments.  A Member may assign all or any part of its Interest only with the consent of the majority other Members.  A transferee of an Interest may only be admitted to the Company a substituted Member in respect of the Interest transferred to it with the consent of the majority other Members; provided, in any event, that the transferee must agree in a document or instrument to be bound by the terms of this Agreement.

18. Resignation and Withdrawal.  A Member may resign or withdraw from the Company only upon the consent of the majority other Members.  Upon any such permitted resignation or withdrawal, the resigning or withdrawing Member shall receive the fair value of its Interest in accordance with the Act, determined as of the date it ceases to be a member of the Company.

19. Additional Members.  Additional Members may only be admitted to the Company upon the consent of the majority of the Members, which consent may be evidenced by, among other things, the execution of an amendment to or an amendment and restatement of this Agreement.

20. Dissolution.  The Company shall dissolve, and its affairs shall be wound up, in accordance with the Act.  Upon the dissolution of the Company, the Company shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and the Members, and none of the Members shall take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Company's business and affairs; provided that all covenants contained in this Agreement and

28. Notices.  Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be in writing or by electronic mail or facsimile and shall be deemed to have been delivered, given and received for all purposes (a) when the same is delivered, if delivered personally to the person or to an officer of the person to whom the same is directed, (b) when the same is actually received, if sent either by courier or delivery service or registered or certified mail, postage and charges prepaid, or (c) when the same is sent unless the sender has actual knowledge of non-receipt, if sent by electronic mail or facsimile, if such electronic mail or facsimile is followed by a hard copy of the emailed or facsimiled communication sent either by courier or delivery service or registered or certified mail, postage and charges prepaid, addressed to the recipient party at the address, electronic mail address and/or facsimile number set forth for such party in the books and records of the Company.

29.    Forum Selection/Consent to Jurisdiction.  Any proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought, conducted and heard in the State or Federal courts of the State of New York and such State and Federal courts shall have non-exclusive jurisdiction over any proceeding seeking to enforce any provision of, or based upon any right arising out of, this Agreement.  Each Member hereby irrevocably (a) submits to the non-exclusive personal jurisdiction of such courts, (b) agrees to service of such courts' process upon them with respect to any such proceeding, (c) waives any objection to venue laid therein and (d) consents to service of process by registered mail, return receipt requested.  Nothing herein shall affect the right of any party to serve legal process in any manner permitted by law or affect its right to bring any action in any other court.

30. Counterpart Execution.  This Agreement may be executed in any number of counterparts with the same effect as if all of the Members had signed the same document.  All counterparts shall be construed together and shall constitute one agreement.  To the fullest extent permitted by applicable law, signatures to this Agreement transmitted by facsimile transmission, by electronic mail in "portable document format" (".pdf") form or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document will have the same effect as physical delivery of the paper document bearing the original signature.

31. Relationship between the Agreement and the Act.  Regardless of whether any provision of this Agreement specifically refers to particular Default Rules, (a) if any provision of this Agreement conflicts with a Default Rule, the provision of this Agreement shall control and the Default Rule shall be modified or negated accordingly and (b) if it is necessary to construe a Default Rule as modified or negated in order to effectuate any provision of this Agreement, the Default Rule shall be so construed.  For purposes of this Section 31, "Default Rule" shall mean a rule stated in the Act that applies except to the extent it is negated or modified through the provisions of a limited liability company's Articles of Organization or limited liability company or operating agreement.[15]

*[signature page follows]*

19

IN WITNESS WHEREOF, the undersigned have caused this Limited Liability Company Agreement to be executed as of the ____ day of _____, 20___.

MEMBERS:

_____
Una Dorisca

_____
Kevin Dorisca

## SCHEDULE A

| Name of Member: | Initial Capital Contribution: | Initial Percentage Interest: |
|---|---|---|
| Una Dorisca | .00 | 50.00 |
| Kevin Dorisca | .00 | 50.00 |

**THE COMPANY CORPORATION DOES NOT GUARANTEE THE ACCURACY OR
CURRENCY OF THESE END-NOTES. QUESTIONS ABOUT ANY OF THESE END-
NOTES OR YOUR STATE'S SPECIFIC LAWS SHOULD BE REFERRED TO AN
ATTORNEY AND/OR ACCOUNTANT IN YOUR STATE TO CONFIRM THEIR
ACCURACY AND CURRENCY.**

**BE ADVISED THAT THE LAWS OF EACH STATE CAN VARY SIGNIFICANTLY.  IT
IS IMPORTANT TO CAREFULLY REVIEW THE LAWS OF THE STATE IN WHICH
THE LLC IS FORMED (OR TO CONSULT A LICENSED ATTORNEY IN THAT
STATE) AND RELEVANT FEDERAL AND STATE TAX LAWS (OR TO CONSULT A
LICENSED TAX ATTORNEY OR ADVISOR) FOR COMPLIANCE WITH ALL LAWS.**

**End-Notes to Form LLC Agreement:**

[1]      All 50 states and the **District of Columbia** require the name of LLCs organized in their
respective jurisdictions to contain certain words (usually at the end of such name) such as
"Limited Liability Company", "Limited" or "Company", or abbreviations thereof such as "LLC"
or "LC".  In the **District of Columbia** and states such as **Arizona, Arkansas, Idaho, Kentucky,
Michigan, Montana, New Hampshire** and **West Virginia**, an LLC that renders certain
professional services (such as physicians, lawyers and architects) must contain in its name words
such as "Professional Limited Liability Company" or "Professional Limited Company", or
abbreviations thereof such as "PLLC" or "PLC".  Additionally, several jurisdictions place
restrictions on the name of the LLC.  For example, the name of a **California** formed LLC cannot
contain the words "bank", "insurance company", "insurer", "trust", "trustee", "incorporated",
"corporation", "Inc." or "Corp"; the name of a **New York** formed LLC cannot contain words
related to the finance, banking, trust or insurance business without prior regulatory approval; the
name of an **Alabama** formed LLC cannot contain the words "bank", "banker" or "banking"; and
the name of an **Oregon** formed LLC cannot contain the words "Cooperative", "Limited
Partnership" or the abbreviation "L.P.".  Before forming an LLC and selecting its name, its
members should consult the laws of the intended state of its formation (or consult a licensed
attorney in that state) to determine the relevant LLC name requirements and restrictions of that
state.

[2]      Certain states restrict or prohibit an LLC formed in that state from conducting certain
activities.  For example, a **Delaware** formed LLC cannot engage in banking; a **Wyoming** formed
LLC cannot engage in banking or insurance; and a **California** formed LLC cannot engage in
certain licensed professions (such as health professions and the practice of law).  Before forming
an LLC, its members should consult the laws of the state of its intended formation (or consult a
licensed attorney in that state) to determine the restrictions or prohibitions (if any) on the
activities of LLCs formed in that state.

[3]      In most states, the primary formation document prepared and submitted to the state in
order to form an LLC in that state is called the "Articles of Organization".  However, in states
such as **Delaware, Mississippi, New Hampshire, New Jersey** and **Washington**, the primary
formation document is called the "Certificate of Formation", and in states such as **Massachusetts**
and **Pennsylvania**, it is called the "Certificate of Organization".  Note also that certain states,
such as **Arizona** and **New York**, require a notice of the filing of the formation document to be

published in a newspaper. Before forming an LLC in a particular state its members should consult the laws of the state of intended formation (or consult a licensed attorney in that state) to determine the filing and notice requirements (if any) for the formation of an LLC in that state.

4      In most states, the relevant filing office is the state's Secretary of State or Department of State office. However, in the **District of Columbia** and states such as **Alaska**, **Arizona**, **Hawaii**, **Maryland**, **Michigan**, **Utah** and **Virginia**, the relevant filing office is called something other than the Secretary of State or Department of State. Additionally, in states such as **Alabama**, the formation documents must be submitted to a probate judge in the county in which the initial registered office of the LLC is located. When forming an LLC in a particular state, the members should consult the laws of that state (or consult a licensed attorney in that state) to determine the proper filing steps and office for the filing of the LLC's formation document(s).

5      While sometimes a member of an LLC will in fact be the person executing and filing the Articles of Organization, Certificate of Formation, Certificate of Organization or other formation document of the LLC, certain states do not require this, but rather permit any person, whether or not a member, that is authorized by the members to so execute and file such formation document. For instance, the **Delaware** Limited Liability Company Act provides that each certificate required to be filed pursuant thereto need only be executed by one or more "authorized persons," and quite often an initial Certificate of Formation of a **Delaware** LLC is executed and filed by such an "authorized person" that is not a member of the LLC. When forming an LLC in a particular state, its members should consult the laws of the state of intended formation (or consult a licensed attorney in that state) to determine the persons authorized and permitted under the laws of that state to execute and file the initial formation document (and any future amendments and/or restatements of such formation document) of an LLC in that state. In any event, it is advisable that the limited liability company or operating agreement of an LLC clearly specify the person or persons executing and filing the initial formation document of the LLC, as well as those persons authorized to execute and file certificates and other filing documents of the LLC in the future (including any amendments and/or restatements of the initial formation document of the LLC).

6      In many states, for an LLC to be fully formed, it needs to have both filed its formation document with the relevant state filing office and to have a limited liability company or operating agreement entered into by its members. While, in some states, such limited liability company or operating agreement is permitted to be oral or implied in addition to written, it is advisable that the members have a written agreement, even in the case of an LLC with few members. Although requiring the existence of a limited liability company or operating agreement (in addition to the filing of a formation document with the relevant state filing office) for an LLC to be formed, certain states, such as **Delaware**, however, permit such agreement to be entered into before, after or at the time of the filing of the formation document with the relevant state filing office and, regardless of when entered into, permit such agreement to be made effective as of the time or date of the filing of the formation document or at such other time or date as provided in the agreement. To the extent that the members of an LLC wish to avail themselves of such permissible provisions of state law with respect to the effectiveness of their limited liability company or operating agreement, they should clearly indicate in the agreement when it is effective. When forming an LLC in a particular state, the members should consult the

laws of that state (or consult a licensed attorney in that state) to determine the required documents necessary and the proper timing and mechanics of the filing, entering into and effectiveness of such documents to ensure that the LLC is fully and properly formed in that state.

[7]     Most states do not limit the term of an LLC formed in that particular state and allow for an LLC to survive until its dissolution and cancellation of its formation document(s). Such LLCs are said to have "perpetual" existence. In fact, the default rule in most states is that an LLC will have a perpetual existence unless stated otherwise in its organizational documents. However, certain states do not permit an LLC to have a perpetual existence and require an LLC to provide a specific term for the life of the LLC in its primary formation documents; and other states require that the perpetual existence of an LLC needs to be stated in its primary formation document in order to be effective. For example, in New Jersey, if an LLC's Certificate of Formation does not provide for a specific term or state that the existence of the LLC is perpetual, the term of the LLC will be 30 years from the date of formation. When forming an LLC in a particular state, the members should consult the laws of that state (or consult a licensed attorney in that state) to determine if the LLC must specify a term or that the existence of the LLC is perpetual in its formation document(s).

[8]     In most states, unless the limited liability company or operating agreement expressly provides otherwise, interests in an LLC are permitted to be evidence by certificates issued by the LLC, although there is generally no requirement that physical certificates be issued. When determining whether to provide for or require the issuance of certificates evidencing interests in an LLC, the members should consult with the laws of the state of formation (or consult a licensed attorney in that state) to determine whether the laws of such state allow for or require the issuance of certificates evidencing interests in the LLC and, if so, the particular requirements of such state (including any particular language that must be included in the limited liability company or operating agreement) relating to the issuance of certificates evidencing interests in the LLC. To the extent that an LLC will issue physical certificates evidencing interests in an LLC, the members should also consider the impact of the existence of physical certificates on other provisions of the limited liability company or operating agreement, including with respect to assignments of interests and admission of members. In addition, when forming an LLC in a particular state, the members should consult the laws of that state (or consult a licensed attorney in that state) to determine the impact of the Uniform Commercial Code on the characterization of the interests in the LLC, particularly if such interests are to be evidenced by certificates. In most cases, interests in an LLC are general intangibles and payment intangibles governed by Article 9 of the Uniform Commercial Code (the "UCC") of the state of formation. To facilitate a pledge of the interests in an LLC, such as in connection with a financing transaction, however, it may be desirable to opt into coverage under Article 8 of the UCC of the state of formation. In that case, in most states, the limited liability company or operating agreement of the LLC (and any certificates evidencing the interest in the LLC to the extent physical certificates are issued) must expressly provide that the interests in the LLC will constitute certificated or uncertificated (as applicable) "securities" as defined in the Article 8 of the UCC.

[9]     Although most states generally permit the contribution by members of cash and/or property to the LLC in exchange for their interests in the LLC, certain states place limitations on other items that a member may wish to contribute as capital contributions. For example, a

member of an **Alaska** formed LLC is not permitted to issue a promissory note or promise to contribute property in exchange for membership interests unless the member has also contributed cash, property or services to the LLC; a **Tennessee** formed LLC may not accept a promise to render future services as a capital contribution; and any promise to make contributions made by a member of a **Missouri** formed LLC must be in writing. In addition, certain states do not require the making of any capital contributions by members. In **Delaware**, for example, a person may be admitted as a member of an LLC and may receive an interest in an LLC without making a contribution or being obligated to make a contribution to the LLC.

[10]    Note that several states allow a limited liability company or operating agreement to expand, restrict or eliminate certain fiduciary duties otherwise owed by a member, including a managing member, to the LLC and its other members. However, even in such states, it is possible that the implied contractual covenant of good faith and fair dealing cannot be contractually restricted or eliminated. Many states also permit or require an LLC to indemnify a member, including a managing member, against certain claims and liabilities associated with such member's or managing member's performance of its duties in managing the LLC, provided, in most instances, that such member or managing member at least acted in good faith (and/or under such other standard(s) set forth in the limited liability company or operating agreement of the LLC). Before incorporating into a limited liability company or operating agreement a provision that expands, restricts or eliminates certain fiduciary duties of a member, including a managing member, or that provides for indemnification of a member, including a managing member, the parties to such agreement should consult the laws of the state in which the LLC is or will be formed (or consult a licensed attorney in that state) to determine the legality and requirements of such provisions.

[11]    Note that in certain states, such as **Minnesota**, the LLC laws of those states do not specifically provide for member management of the LLC. Additionally, certain states, such as **Minnesota** and **North Dakota**, also require the election or appointment of "managers" to perform the functions of President, "Chief Manager", Treasurer and/or Secretary of the LLCs formed in those states. However, under the laws of those states, the members may control any phase of the LLC's business and affairs, liquidation, dissolution and termination, and the relationship of the members of the LLC, pursuant to the terms contained in a member control agreement. Before forming an LLC in a particular state or entering into a limited liability company or operating agreement for an LLC, the members should consult the LLC laws of that state (or consult a licensed attorney in that state) to determine the state's laws governing the management, operation and control of the LLC.

[12]    It is not normally required by law that there be a unanimous consent or affirmative vote of all of the members of an LLC in order for an LLC to act (and, in this regard, note that references in this Agreement to actions being taken by "the Members" will generally be interpreted to require the unanimous consent or affirmative vote of all of the Members of the Company, whether or not so expressly stated). In certain circumstances, such as where there are a large number of members, there may be advantages in requiring the consent or affirmative vote of only a portion of the voting members or the percentage interests in the LLC held by the voting members (e.g., the consent or affirmative vote of members holding only a majority of the percentage interests in the LLC) for the LLC to take certain actions. In such cases, however, the

the LLC's limited liability company or operating agreement provides differently.  If the limited liability company or operating agreement provides differently, the default rules are overridden by the provisions contained in the agreement. If the state in which an LLC is formed has included such default rules in its LLC laws, then the members may wish to include a provision like that contained in Section 31 to clarify that in the event of a conflict between the state default rules and a contrary provision in the LLC's limited liability company or operating agreement, that the contrary provision will govern and control.



**Jurisdiction Detailed Report for Ms. Una Dorisca**

| Entity | Jurisdiction | Authorization Date | Jurisdiction ID | Status | Registered With |
|---|---|---|---|---|---|
| Au Rebelle, LLC | New York (D) | 08/13/2014 | 4621133 | CSC – Active | Department Of State, Division Of Corporations, State Records And Uniform Commercial Code |

Au Rebelle, LLC | 1
**Formal Letter of Request**

To:

Una Rawls, née Dorisca

4 Jasmine Drive
West Boylston, MA 01583

From:

Kevin Dorisca

255-26 149th Ave
Rosedale, NY 11422

October 19th, 2018

You (Una Rawls) updated the passwords for multiple accounts associated with *Au Rebelle, LLC*, a partnership where Kevin Dorisca and Una Rawls each on 50%.

This letter is a formal request from Kevin Dorisca to Una Rawls, née Dorisca, requesting that Mrs. Rawls provide Mr. Dorisca with the passwords and any other access information to the following and any other accounts used for *Au Rebelle, LLC*:

- AnuNaturals@Yahoo.com
- Paypal.com for *AuRebelle, LLC* Username – AnuNaturals@Yahoo.com
- Instagram account for AuRebelle, LLC Username – *@AnuNaturals,* email AnuNaturals@Yahoo.com

Please provide the information to Kevin Dorisca within 10 days of receipt of message, October 29th 2018.

Please note your actions violate the following:

- **Uniform Partnership Act and Uniform Limited Partnership Act** SECTION 408. RIGHTS TO INFORMATION OF PARTNERS AND PERSONS DISSOCIATED AS PARTNER.

- **New York Consolidated Laws, Partnership Law - PTR § 44.** Right to an account

- **New York Consolidated Laws, Partnership Law - PTR § 40.** Rules determining rights and duties of partners

-
- **New York Consolidated Laws, Partnership Law - PTR § 24. Partnership** bound by partner's wrongful act

- **New York Consolidated Laws, Partnership Law - PTR § 98.** Rights, powers and liabilities of a general partner

(CONTINUES ON BACK)
- **New York Consolidated Laws, Partnership Law - PTR § 42.** Duty of partners to render information

Failure to comply with this request in relation to NEW YORK STATE law (also New York, the State of Incorporation and Jurisdiction for Au Rebelle, LLC) will result in legal action.

This letter has been emailed to Una.Dorisca@gmail.com and AnuNaturals@Yahoo.com and sent to via certified USPS mail to:

"Una Rawls, née Dorisca
 4 Jasmine Drive,
West Boylston, MA 01583"

On October 19th, 2018 by Kevin Dorisca


Best Regards,
Kevin Dorisca

From: **Kevin D** k.dorisca@gmail.com 
Subject: Au Rebelle, LLC: Formal Letter of Request
Date: October 19, 2018 at 9:02 PM
To: anunaturals@yahoo.com AnuNaturals@Yahoo.com
Cc: una.dorisca@yahoo.com, **kevin dorisca** k.dorisca@gmail.com, HAIRGARTEN@GMAIL.COM

**The following information presented in the body of this email is also attached as a Word document,**

October 19th, 2018

You ("Una Rawls") updated the passwords for multiple accounts associated with *Au Rebelle, LLC,* (a 50/50 partnership between Kevin Dorisca & Una Rawls) that as of October 19, 2018, I ("Kevin Dorisca") still do not have access to, despite multiple requests made to you, to provide them since May 2018.

· As a direct result of your actions, temporary changes have been implemented to other accounts that *f.e* require 2-step verification with the anunaturals@yahoo.com .

This letter is a formal request from Kevin Dorisca to Una Rawls, née Dorisca, requesting that Mrs. Rawls provide Mr. Dorisca with the passwords and any other access information to the following and any other accounts used for *Au Rebelle, LLC:*

- AnuNaturals@Yahoo.com

- Paypal.com for *AuRebelle, LLC* Username – AnuNaturals@Yahoo.com

- Instagram account for AuRebelle, LLC Username – @AnuNaturals, email AnuNaturals@Yahoo.com

Please provide the information to Kevin Dorisca within 10 days of receipt - October 29th 2018.

Failure to comply with this request is a direct violation of NEW YORK STATE law (also New York, the State of Incorporation and Jurisdiction for Au Rebelle, LLC) and will result in legal action.

A few of the laws, which your actions currently violate, are listed below:

· Uniform Partnership Act and Uniform Limited Partnership Act SECTION 408. RIGHTS TO INFORMATION OF PARTNERS AND PERSONS DISSOCIATED AS PARTNER

· New York Consolidated Laws, Partnership Law - PTR § 44. Right to an account

· New York Consolidated Laws, Partnership Law - PTR § 40. Rules determining rights and duties of partners

· New York Consolidated Laws, Partnership Law - PTR § 24. Partnership bound by partner's wrongful act

· New York Consolidated Laws, Partnership Law - PTR § 98. Rights, powers and liabilities of a general partner

· New York Consolidated Laws, Partnership Law - PTR § 42. Duty of partners to render information

This letter has been emailed to Una.Dorisca@gmail.com and AnuNaturals@Yahoo.com and sent via certified USPS mail to:

"Una Rawls, née Dorisca

# UNIFORM PARTNERSHIP ACT (1997)
## (*Last Amended 2013*)

Drafted by the

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS

and by it

APPROVED AND RECOMMENDED FOR ENACTMENT
IN ALL THE STATES

at its

ANNUAL CONFERENCE
MEETING IN ITS ONE-HUNDRED-AND-TWENTY-SECOND YEAR
BOSTON, MASSACHUSETTS
JULY 6 - JULY 12, 2013

*WITH PREFATORY NOTE AND COMMENTS*

COPYRIGHT © 2014
By
NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS

November 13, 2014

(2) the person seeks the information in good faith; and

(3) the person satisfies the requirements imposed on a partner by subsection (b).

(f) Not later than 10 days after receiving a demand under subsection (e), the partnership in a record shall inform the person that made the demand of:

(1) the information that the partnership will provide in response to the demand and when and where the partnership will provide the information; and

(2) the partnership's reasons for declining, if the partnership declines to provide any demanded information.

(g) A partnership may charge a person that makes a demand under this section the reasonable costs of copying, limited to the costs of labor and material.

(h) A partner or person dissociated as a partner may exercise the rights under this section through an agent or, in the case of an individual under legal disability, a legal representative. Any restriction or condition imposed by the partnership agreement or under subsection (j) applies both to the agent or legal representative and to the partner or person dissociated as a partner.

(i) Subject to Section 505, the rights under this section do not extend to a person as transferee.

(j) In addition to any restriction or condition stated in its partnership agreement, a partnership, as a matter within the ordinary course of its business, may impose reasonable restrictions and conditions on access to and use of information to be furnished under this section, including designating information confidential and imposing nondisclosure and safeguarding obligations on the recipient. In a dispute concerning the reasonableness of a restriction under this subsection, the partnership has the burden of proving reasonableness.

113

## Comment

Subsections (a) and (c) derive from UPA (1997). The other subsections are derived from the ULPA (2001) § 401 (rights to information of general partners and former general partners) and were adopted as part of the 2011 and 2103 Harmonization amendments. The rules stated here might be termed "quasi-default rules"—subject to some change by the partnership agreement. *See* Section 105(c)(4) (prohibiting unreasonable restrictions on the information rights stated in this section).

Although the rights and duties stated in this section are extensive, they are not necessarily all-inclusive. This act's statement of fiduciary duties is not exhaustive, *see* the comment to Section 409(a), and some cases characterize owners' information rights as reflecting a fiduciary duty of those with management power. *E.g. Bakerman v. Sidney Frank Importing Co., Inc.*, No. Civ.A. 1844–N, 2006 WL 3927242, at *14 (Del. Ch. Oct. 16, 2006) (holding that an LLC manager owed "certain duties to members of the LLC" and stating that "[w]hen fiduciaries communicate with their beneficiaries in the context of asking the beneficiary to make a discretionary decision—such as whether to consent to a sale of substantially all the assets of an LLC—the fiduciary has a duty to disclose all material facts bearing on the decision at issue") (citing *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 137 (Del. 1997)).

**Subsection (a)**—A general partnership is often a very informal organization. Accordingly, this subsection states a default-required location for any books and records a partnership may have but does not require that books and records be kept. Other law may so require, however—particularly tax law. This subsection applies to any books and requests kept to satisfy other law.

**Subsection (b)**—This subsection states the rule pertaining to information memorialized in "any record maintained by the partnership." For the meaning of "material" as applied to information, see Section 409(f), comment.

**Subsections (c) and (d)**—In appropriate circumstances, violation of either or both of these provisions might cause a court to enjoin or even rescind action taken by the partnership, especially when the violation has interfered with an approval or veto mechanism involving partner consent. *E.g., Blue Chip Emerald L.L.C. v. Allied Partners Inc.*, 299 A.D.2d 278, 279–80 (N.Y. App. Div. 2002) (invoking partnership law precedent as reflecting a duty of full disclosure and holding that "[a]bsent such full disclosure, the transaction is voidable").

**Subsection (c)**—This subsection imposes a duty on the partnership, not the partners. However, a partner could be liable in damages if the partner were to: (i) breach a duty under Section 409 or the partnership agreement; and (ii) in doing so cause or suffer the partnership to breach the duty stated in this paragraph.

**Subsection (c)(1)**—This provision imposes an affirmative duty to volunteer information. However, given the assumption that each partner will be active in management, the obligation ceases "to the extent the partnership can establish that it reasonably believes the partner already knows the information."

114

EXAMPLE:  A partnership has two partners:  each of which is regularly engaged in conducting the partnership's activities; both of which are aware of and have regular access to all significant partnership records; and neither of which has special responsibility for or knowledge of any particular aspect of those activities or the relevant partnership records.  Most likely, neither partner is obliged to draw the other general partner's attention to information apparent in the partnership's records.

EXAMPLE:  Although a partnership has three general partners, one is the managing partner with day-to-day responsibility for running the partnership's activities.  The other two partners meet periodically with the managing partner, and together with that partner function in a manner analogous to a corporate board of directors.  Most likely, the managing partner has a duty to draw the attention of the other partners to important information, even if that information would be apparent from a review of the limited partnership's records.

In any event, the obligation is limited to information that is both material and known by the partnership. "Knowledge" is viewed subjectively (*i.e.*, actual knowledge). Section 103(a)(1). Materiality is viewed objectively. Thus, the duty applies to known, material information, even if the partnership does not know that the information is material.

A partnership will "know" what its partners know. Under Section 103(e), "[a] partner's knowledge . . . of a fact relating to the partnership is effective immediately as knowledge of or notice to the partnership." As to others acting or reasonably appearing to act on behalf of the partnership, common law agency rules will apply. RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006) (Imputation of Notice of Fact to Principal).

Typically a partner's duties are continuous, and therefore a partner's right to information is not just transaction-specific. Ongoing managerial responsibilities require ongoing information—both periodically and *ad hoc* when a situation warrants.

For the meaning of "material" as applied to information, see Section 409(f), comment.

**Subsection (c)(2)**—Other law determines which party has the burden of proof as to the stated exception.

**Subsection (d)**—This subsection imposes a duty directly on each partner, "except to the extent the [partner] can establish that it reasonably believes [another] partner already knows the information."

EXAMPLE: A partnership has two partners:
- each of whom is regularly engaged in conducting the partnership's activities;
- both of whom are aware of and have regular access to all significant partnership records; and
- neither of whom has special responsibility for or knowledge of any particular aspect of those activities or the relevant partnership records.

Most likely, neither partner is obliged to draw the other partner's attention to information

apparent in the partnership's records.

EXAMPLE: Although a partnership has three partners, one is the managing partner with day-to-day responsibility for running the partnership's activities. The other two meet periodically with the managing partner and together with that partner function in a manner analogous to a corporate board of directors. Most likely, the managing partner has a duty to draw the attention of the other partners to important information, even if that information would be apparent from a review of the partnership's records.

Because this subsection imposes duties directly on partner, the duties are in the nature of a contractual obligation, and breach is a matter of strict liability. For example, it is no defense for a partner under this section to assert that, although the partner failed to furnish required information, the failure did not amount to gross negligence under Section 409(c).

**Subsection (e)**—Codifying the information rights of former owners began with UPA (1997) § 403(b).

For the additional information rights of the legal representative of a deceased partner, see Section 505.

**Subsection (e)(1)**—A person dissociated as a partner has information rights in that capacity only as to the period during which the person was a partner.   To the extent that further information is accessible under Section 505(2) (providing access to the legal representative of a deceased partner), that access is limited both in purpose ("for purposes of settling the estate") and in scope ("the rights the deceased partner had under Section 408").

**Subsection (e)(2)**—A duty of good faith is needed here, because a person claiming access under this subsection is no longer a partner and is no longer subject to a partner's obligation of good faith and fair dealing under Section 409(d). *See* Section 603(b)(2) (stating a person's dissociation as a partner terminates as to subsequent events the person's duties under Section 409, including the contractual obligation of good faith). *But see id.*, cmt (noting that the common law implied covenant will continue to be relevant if the partnership agreement provides continuing rights and obligations for a person dissociated as a partner).

In the context of Subsection (e)(2), "good faith" is properly understood to mean an honest belief that the request is made for a proper purpose. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285 (Tex. 1998) (holding that "'good faith' in the surety agreement before us refers to conduct which is honest in fact, free of improper motive or wilful ignorance of the facts at hand"); Andrews v. Bible, 812 S.W.2d 284, 288 (Tenn. 1991) (describing "subjective good faith" as "[a] pure heart but an empty head") (quoting *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D.Ky.1987)).  Willful ignorance includes being an ostrich. "While 'honesty' may require no more than a pure heart, it is questionable that a pure heart can co-exist with closed eyes. It is not honest to close one's eyes so as to maintain an empty head." *J.R. Hale Contracting Co. v. United New Mexico Bank at Albuquerque*, 799 P.2d 581, 591 (NM 1990). *See also* UPA (1914) § (3)(1) ("A person has 'knowledge' of a fact within the meaning of this act not only when he has actual knowledge thereof, but also when he has

knowledge of such other facts as in the circumstances shows bad faith.").

**Subsection (h)**—For the avoidance of doubt, this subsection expressly authorizes taking action through an agent.  The doubt might arise from old corporate cases in which the parties contested a shareholder's right to exercise inspection rights through another person. *White v. Coeur D'Alene Big Creek Mining Co.*, 55 P.2d 720, 723 (Idaho 1936) (stating that "[t]he refusal to permit respondent [shareholder] to appoint his own attorney or agent to make the examination [of the corporation's books] was in effect a denial of his right" of inspection); *State v. Monida & Yellowstone Stage Co.*, 124 N.W. 971, 972 (Minn. 1910) (upholding a trial court's mandamus order, "which shall provide that [the shareholder complainant], or such attorney or agent as he may select, … shall be allowed to inspect the books, records, and papers of the defendant [corporation]").

No negative inference should be drawn about using agents to take other action under this act.

**Subsection (j)**—This subsection provides fallback protection for gaps in the partnership agreement. For example, the partners may protect trade secrets from disclosure and prohibit various misuses of confidential information even if the partnership agreement omits to do so.

The reference to "ordinary course" pertains to Section 401(k) (stating that any "matter in the ordinary course of business of a partnership may be decided by a majority of the partners"). This approach is necessary, lest a requesting partner have the power to block imposition of a reasonable restriction or condition needed to prevent the requestor from abusing the partnership.

The burden of persuasion under this subsection contrasts with the burden of persuasion under Section 105(c)(4) (prohibiting unreasonable limitations on the information rights provided by this section). Under that paragraph, as a matter of ordinary procedural law the burden is on the person making the claim.

### SECTION 409.  STANDARDS OF CONDUCT FOR PARTNERS.

(a) A partner owes to the partnership and the other partners the duties of loyalty and care

stated in subsections (b) and (c).

(b) The fiduciary duty of loyalty of a partner includes the duties:

(1) to account to the partnership and hold as trustee for it any property, profit, or

benefit derived by the partner:

(A) in the conduct or winding up of the partnership's business;

(B) from a use by the partner of the  partnership's property; or



**8,413**
posts

**23.2K**
foilowers

**844**
following

Message

**AuRebelle NaturalHair Products**
Home & Hand Made All Natural Ingredients
Email Anunaturals@yahoo.com
We Ship Worldwide
www.aurebelle.com/

Followed by **matt_eclectic**, **epmlive**, **rannysmitty** + **7 more**





**lohmaintenance** I need carrot oil 🙄

30m   1 like   Reply

**anunaturals** @lohmaintenance it's on the new site no worries 😃

27m   Reply

**alittle_curlygirl_** How can we place orders in the future?

5h   1 like   Reply

**anunaturals** @alittle_curlygirl_ www.hairgarten.com is our new site . @hairgarten

5h   1 like   Reply

**merc.y_** Will you let us know when it is unofficially open? 

5h   1 like   Reply

**anunaturals** @merc.y_ it's closed for good. New site

       



Please do not order here.
We can only fulfil the
previous orders. We have
no stock for future
orders. Sorry about any
automated emails

off

   

**46 likes**

**anunaturals** Hello folks , in light of new things coming we are no longer  filling out new orders on wee.aurebelle.com please disregard any automated promotions sorry about the confusion. This website is unofficially closed.

View all 8 comments

**lohmaintenance** I need carrot oil 🤎

**anunaturals** @lohmaintenance it's on the new site no worries 😬

14 HOURS AGO

**Comments**



**anunaturals** @alittle_curlygirl_
www.hairgarten.com is our new
site . @hairgarten

5h   1 like   Reply

**merc.y_** Will you let us know when it is
unofficially open? 😄

5h   1 like   Reply

Hide replies

**anunaturals** @merc.y_ it's closed
for good. New site
www.hairgarten.com @hairharten

5h   1 like   Reply

**alittle_curlygirl_** @anunaturals oh
thank goodness lol I was getting
scared for a second I need u guys in
my life 😂

5h   1 like   Reply

**motherma3_i** Gotcha 👍👍

11h   1 like   Reply



## Explore some new items below

Some older products are still available with a new name and label but some are no too here. Hover on the items below to see if we still sell it. Click each for more info.







Una Rawls
Founder and CE

Welcome new comers and
welcome back our loyal
customers. I have worked
long and hard to make
this transition possible .
Please enjoy our newest
faves and continue to
enjoy your old favs!

Your Name *        Your Email *

Ask us anything...

Get In Touch



What we offer





# CHASE ○

Printed from Chase Personal Online

## CHASE CHECKING (...8680) ›

| Available balance | Present balance | Overdraft protection | Debit card coverage |
|---|---|---|---|
| **−$400.91** | **−$400.91** | **Off** | **Off** |

SHOWING    All transactions

| Date | Description | Type | Amount | Balance |
|---|---|---|---|---|
| Pending | POS DEBIT Amazon Prime AMZN.COM/BIL WA | Misc. debit | −$14.14 | — |
| Pending | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:J22222CAAD5RA ORIG ID:PAYPALEC88 | ACH debit | −$86.86 | — |
| | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:J22222CAAAD36 ORIG ID:PAYPALEC88 | ACH debit | −$53.38 | — |
| | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:1004077302035 ORIG ID:PAYPALEC88 | ACH debit | −$49.66 | — |
| | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:J22222CAABNR8 ORIG ID:PAYPALEC88 | ACH debit | −$48.53 | — |
| | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:J22222CAAAAU2 ORIG ID:PAYPALEC88 | ACH debit | −$46.58 | — |
| | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:J22222CAAA8QC ORIG ID:PAYPALEC88 | ACH debit | −$45.60 | — |
| | ORIG CO NAME:PAYPAL CO ENTRY DESCR:ECHECK SEC:WEB IND ID:1004077264406 ORIG ID:PAYPALEC88 | ACH debit | −$43.33 | — |

Case 1:18-cv-09756-JGK   Document 1   Filed 10/23/18   Page 47 of 51

# Accept Payments

Toggle between the tabs to get an overview of received payments, and to manage your payment methods.

Payment Methods          Payment Overview

CONNECTED ⓘ                                                    + Add Payment Methods

**PayPal**

Provider: PayPal

Account: anunaturals@yahoo.com

Manage Account

Active on your Checkout     ✓

+ Add Payment Methods



From: **Anu Naturals** anunaturals@yahoo.com
Subject: **Also answer our customers EMAIL.**
Date: **May 8, 2017 at 10:17 AM**
To: una.dorisca@yahoo.com



Also I have record upon records of customers complaining that emails  regarding orders aren't being answered for extended period of times. Answer these people emails. you do have OUR apple desktop which we agreed you would have under certain terms which at some point will be fulfilled.

> On May 5, 2017, at 10:21 PM, Anu Naturals <anunaturals@yahoo.com> wrote:
>
> Dear Una,
>
> We are coming up to the end of our loan payments and I've spent the past few months learning a lot about marketing and general info about running a business. I propose that we have a meeting by you, where we get out whatever we need to say to one other so we can get to at least a working relationship.
>
> I want this business to grow and it is not easy when we are not  on the same page. I also want to see Sam and Mason and be a part of their lives because I miss them.
>
> Additionally, I want to come up there at some point, maybe with a friend, to help bottle and get these orders out so we can catch up and rebuild confidence with our customers.
>
> This business is our way to leave a legacy, not only for  ourselves and our family but for our community and to make a difference in the next generation of curly haired folk.
>
> We both worked very hard and I know neither of us want this to fail over our inability to be adults. Au Rebelle can succeed, I want it to, I know you do too and our customers want it to.
>
> Also, I think if we can establish a working relationship so I don't have to communicate to you through Mummy, that would give her some peace.
>
> I propose that we meet at some point later in the month, the third week of May preferably. I will draft up a new operating contract that will detail what our responsibilities will be and send it to you before we meet so you can go over it.
>
> I want to be inspired when I do work to grow Au Rebelle/AnuNaturals and for that I need to know I have a partner in this who is just as inspired. We have the opportunity to create something big, the demand is there.
>
> So I hope you accept my invitation to meet up so we can move forward and fight for our place at the top. Also, I hope we can have open communications within the next few weeks so we discuss how we'll get the taxes paid and any debts.
>
> Regards,
> Kevin



**From:** **Kevin Dorisca** k.dorisca@gmail.com
**Subject:** Re: Operating agreement
**Date:** May 10, 2017 at 11:17 AM
**To:** Una Dorisca una.dorisca@yahoo.com

**On May 8, 2017 1:08 PM, "Una Dorisca"** <una.dorisca@yahoo.com> **wrote:**
Ok Kevin

Sent from Yahoo Mail for iPhone

On Monday, May 8, 2017, 10:11 AM, Kevin D <k.dorisca@gmail.com> wrote:

Yeah you will not be getting 51% of anything, but what is most important is that I showed an attempt to reconcile for the business and you continue with outrageous demands and your favorite things which include falsehoods and or misrepresentations.

This will be added to my documents, including your attempts to sabotage our business and breach of contracts. I also invested into this company BUT you more than retrieve your initial investment, which can be proved VERY easily. Keep trying it buddy lol

> On May 8, 2017, at 6:12 AM, Una Dorisca <una.dorisca@yahoo.com> wrote:
>
> I think the operating agreement need to be taken cared of by a lawyer from start to finish.
>
> I am not moving forward with it unless I have 51% of the company after all I am the one who developed and created these products. I am also the one who initially invested in supplies when I started to create these products.
>
> Payton and I do not feel comfortable letting you in our home for any reason.
>
> The other loans and bills we have can be paid as aggressively as the bench loans were paid.
>
>
> Sent from Yahoo Mail for iPhone



**Mummy**
+13473411007

**M** Una said to send yahoo
password she needs to update
customer
3:56 PM

Idk the password. She has to
update the password
3:57 PM

**M** Password to our email to
update customer
4:00 PM

I do not know the Yahoo
password. She has to update it
4:01 PM

She needs to send me the new
password. I was logged out
6:45 PM

**M** Ok 6:46 PM

Tuesday, May 15, 2018

**M** Thanks. 12:00 PM

Thursday, May 17, 2018

I need the Yahoo password
10:31 AM

999

  SEND



### Una
+15087698682

Saturday, May 26, 2018

> Capital one $300. If you ever checked the emails which this is proof you Don't

1:29 PM

Tuesday, May 29, 2018

> I need the email password

2:45 AM

 Enter message

